## CHADWICK *vs.* PERKINS.

Where the parties have reduced their contract to writing, the written instrument alone is to be resorted to, for the measure of their liability;—and if the writing amounts to a declaration of trust, its extent is to be gathered from the writing only, unaffected by parol testimony.

THIS was an action for money had and received, at the trial of which, before *Weston* J. the following facts appeared.

One *John Carlton* 2d, being indebted to the defendant in about 150 dollars in the year 1817, gave him an absolute deed of his farm, by way of security, taking back a writing some days afterwards, by which the defendant stipulated to reconvey to him the farm, on payment of his debt. This writing was never registered.

Afterwards, in *May* 1819, the plaintiff, having an execution for $226,75 against *Carlton*, caused his right in equity of redemp-

tion of the same land to be seized and sold at a sheriff's sale where it was struck off to the plaintiff himself for twenty-five dollars. On the day following this sale, it was agreed between the plaintiff, and the defendant, and *Carlton,* that the plaintiff should abandon his title under the levy, and discharge his execution, which he did;—the defendant giving a bond to *Carlton,* conditioned to reconvey the farm to him, upon his paying the defendant his debt, being $198 27, and the further sum of $261 73 in one year;—and the defendant giving another bond to the plaintiff, conditioned that if the plaintiff should, upon demand, after six months, pay the defendant the said sum of $198 27, the defendant would thereupon, within one year from the date of the bond, either convey to the plaintiff all his title and interest in the farm, or refund to him the sum so paid, and pay him the further sum of $261 73. The plaintiff never paid to the defendant the sum due to him as above, although, eighteen months after the execution of the bond, he was particularly requested by the defendant so to do, and to close the business; the defendant then offering to convey the land to the plaintiff, if he would pay him that sum.

The bond made to the plaintiff was deposited with *P. H. Washburn,* Esq. it being agreed that if Col. *Peter Chadwick,* brother of the plaintiff, who held a note against the defendant due in *July* following, for about $160, should call on the defendant for payment, the bond should be given up to the defendant. And the defendant's declarations were proved, that as long as the plaintiff procured his brother's forbearance of calling for payment of the note due him, so long the bond should be good against the defendant. And it appeared that the plaintiff did procure such forbearance, and that the plaintiff finally paid the note to his brother, about the middle of *April* 1822. Mr. *Washburn* testified that he should not have delivered up the bond to the plaintiff without receiving payment of the note due to his brother.

The plaintiff further proved that the defendant conveyed the farm to *Jonathan Carlton, March* 15, 1822, for the consideration of five hundred dollars expressed in the deed.

*John Carlton 2d,* being called by the defendant, testified that he had failed to comply with the condition on his part to be performed, as stated in the defendant's bond to him; and that although

the consideration expressed in the deed from the defendant to *Jonathan Carlton* was $500, yet in truth he paid only $203, being the amount due to the defendant. This part of his testimony was objected to by the counsel for the plaintiff, as contradicting the deed; but the Judge admitted it; and he received other evidence tending to shew that the farm, when sold by the defendant, was worth much more than the amount due to him.

Upon this evidence the Judge directed a nonsuit, with leave to the plaintiff to move to set it aside, if, in the opinion of the Court, the action could be supported.

*Allen*, for the plaintiff, now argued that the evidence reported was sufficient to maintain the action. He contended that the plaintiff had no remedy on the bond; for it was never in his possession within the year; and the first act was to be done by the defendant himself, by demanding the money, which he omitted to do. There being no debt due from the plaintiff, and he having no means of knowing that *Carlton* had not already paid the money, he was guilty of no neglect in not offering to pay it before demand; though from the peculiar terms of the condition the penalty was not forfeited. The bond therefore having become inoperative, the remedy is open by this form of action, which is in the nature of a bill in equity. *Appleton v. Crowninshield* 8 *Mass.* 358. *Stratton v. Rastall* 2 *D. & E.* 366. It further is manifest from the evidence, that the defendant held the property merely as trustee for whom it might concern; and to compel the execution of such trust, this action is the proper remedy. *Newhall v. Wheeler* 7 *Mass.* 198. 16 *Mass.* 221.

That the defendant has received money in trust for the plaintiff, sufficiently appears from the consideration in the deed, which he cannot be permitted to deny. *Steele v. Adams* 1 *Greenl.* 1. *Schermerhorn v. Vanderheyden* 1 *Johns.* 139. 7 *Johns.* 342. 2 *H. Bl.* 1249. The only exception to this rule is where the action is between the original parties to the deed, both of whom are equally conusant of the fact;—but here the plaintiff was no party to the conveyance; and to allow the defendant to contradict what he has put on record as true, under his hand and seal, is to permit him to practice fraud on the innocent.

But if he had received no money for the property sold, or not so much as its value, yet he is accountable for all, which, in the exercise of common care, diligence, and good faith, he might have obtained. *Floyd v. Day* 3 *Mass.* 403. *Randall v. Rich* 11 *Mass.* 494. *Heard v. Bradford* 4 *Mass.* 326. And though the plaintiff has paid no money directly to the defendant, yet he has done what imposed on the defendant an equal obligation, by releasing his lien on the land, and discharging his execution. *New-comb v. Bracket* 16 *Mass.* 161. 8 *Johns.* 257. 14 *Johns.* 453.

*Boutelle*, for the defendant. As the parties reduced their whole contract to writing, the only remedy is by action on the bond. *Richards v. Killam* 10 *Mass.* 239. 2 *D. & E.* 100. 2 *Taunt.* 145, 183. 1 *Dane's Abr.* ch. 9, *art.* 22.

If this remedy has failed, it is not the fault of the defendant. He has neither waived the contract, nor refused to perform any of his stipulations. Eighteen months after it was made, he demanded his money of the plaintiff, and after waiting as much longer for payment, and waiting in vain, he conveyed the land, for the amount of his own debt, and no more.

But if the special contract were waived or rescinded by consent of parties, yet the plaintiff is not entitled in equity to recover. For if the land be considered as a fund for payment of the two debts, there was a duty for the plaintiff to perform, before he was entitled to the benefit of the fund; and this duty he not only neglected, but refused to comply with. The defendant was therefore no longer bound to connect his debt with that of the plaintiff, but was at liberty to seek his own separate indemnity by a sale of the land.

To shew the admissibility of parol evidence to prove the sum actually received, he cited *Rex v. Scammonden* 3 *D. & E.* 474. *Davenport v. Mason* 15 *Mass.* 85. 2 *D. & E.* 12. *Maule & Selw.* 387. *Wilkinson v. Scott* 17 *Mass.* 249.

And he contended that if the bond is to be treated as a nullity, then the contract is void, by the statute of frauds, being an entire contract, for the sale of land, and not in writing. 7 *D. & E.* 201. 8 *Johns.* 253.

Chadwick *v.* Perkins.

WESTON J. delivered the opinion of the Court.

It appears that in *February,* 1817, *John Carlton* the second, conveyed a certain farm to the defendant. The object of the parties was, to secure to the defendant a debt of about one hundred and fifty dollars, due to him from *Carlton.* That the latter might have the benefit of what the farm might be worth more than sufficient to pay the debt, the defendant gave to *Carlton,* sometime after the conveyance, a writing, which was not recorded, and which does not appear to have been under seal, wherein he undertook to reconvey said farm to him, upon payment of what was due to himself. Afterwards, in *May* 1819, the plaintiff, having an execution against *Carlton,* seized and sold upon the same an equity of redemption; which it was assumed *Carlton* had in the farm. From the small sum of twenty five dollars, for which this interest was sold, it may fairly be presumed that strong doubts were entertained whether there did then remain to *Carlton* any interest in the farm, which could be sustained at law, as an equity of redemption. And in point of fact and of law, *Carlton* had no such interest in the farm ; but his right and remedy rested in action only against the defendant ; after payment to him of his debt, in virtue of the writing by him given to *Carlton.* But the defendant manifested a willingness, as in good faith he was bound to do, to give to *Carlton,* or to his creditor the plaintiff, every reasonable facility, whereby they might avail themselves of the property, after his own claim upon it had been satisfied. Accordingly an arrangement was made between the parties, satisfactory to all concerned. The plaintiff thereupon abandoned his claim under the seizure of the supposed equity of redemption, which he could not enforce, and received from the defendant a bond, having a legal and binding efficacy, by which, first paying to the defendant his debt, he became assured, upon certain terms and conditions, of the payment also of his own, if the farm was of sufficient value, as the plaintiff now insists that it was. The defendant it appears held himself in readiness to fulfil the condition of his bond to the plaintiff, and eighteen months after its execution called upon him to pay the debt due to himself, and to close the business. But the plaintiff neglected so to do ; nor did he at any time, while the

defendant held the land, offer to perform the stipulations on his part, and thus entitle himself to the fulfilment of the conditions, inserted for his benefit. This it is said however is owing to the neglect of the defendant, to demand of the plaintiff payment of the debt due to him, after six months and within a year ; but if the defendant did not, within the period limited, make the demand, yet the plaintiff was at liberty to tender the money. And it is frankly admitted by his counsel that his remedy upon the bond is gone.

The defendant's contract with the plaintiff, being proved by an instrument under seal, it would seem that upon legal principles, that instrument alone ought to constitute the measure of his liability. All prior conversation and stipulations were merged in the subsequent written contract. And it would be a violation of a well settled rule of the law of evidence, to suffer the written contract, especially if under seal, to be enlarged, varied, or explained by parol testimony.

But it is contended that, by reason of the bonds executed by the defendant, operating in the nature of a declaration of trust, the defendant thereafterwards held the land in trust for the plaintiff, to the amount of his debt. It is possible that, while the benefit of the bond remained to the plaintiff, according to its conditions, the land might have been held charged with the fulfilment of these conditions, in the hands of the defendant, or of any other person, to whom it might be conveyed, with a knowledge of the trust. Upon this point however we give no opinion ; because we are satisfied that if these instruments do amount to a declaration of trust, the measure and extent of such trust is to be gathered from the papers alone ; unaffected by any parol testimony. Now the defendant no where stipulates to hold the land in trust for the plaintiff ; or to perform any other duty to him ; unless his debt should first be paid by the plaintiff or by *Carlton* ; or unless *Carlton* should pay him that debt, and also the debt due to the plaintiff. Neither of these was done ; although the defendant requested the plaintiff to pay him, after the time limited, and thus put himself in a condition to avail himself of whatever the farm might be worth, beyond the defendant's claim.

In the case of *Appleton v. Crowninshield*, cited for the plaintiff, it was decided by two judges against one, that although the plaintiff's remedy on his bottomry bond was gone; yet that, under the peculiar circumstances of that case, money afterwards received by the defendant was deemed to have been received in part to the plaintiff's use; inasmuch as the defendant's claim to a portion of that money originated from funds, furnished by the plaintiff. Admitting that the defendant in this case has received more than sufficient to pay his debt, which is denied, and has been disproved, if the testimoney was competent, it was not derived from property furnished by the plaintiff, but by *John Carlton*; and whatever may be his liability to the latter, we perceive no evidence of any engagement on the part of the defendant to hold the surplus for the plaintiff's benefit; nor are we satisfied that any such obligation rested upon him by implication of law. Entertaining this view of the questions presented, it becomes unnecessary to decide how far the testimony objected to, was or was not competent.

The nonsuit is confirmed; and the defendant is allowed his costs.

---

NOTE. In the revision of the statutes in the year 1821, there was no re-enactment of the *third* section of the *Stat.* 1783, *ch.* 37, directing the mode of transferring real estates, &c. by which all declarations of trusts, created by act of the parties, were required to be in writing ; so that on this subject there is not any statutory provision in *Maine*, unless the statute of *Massachusetts* be regarded as yet in force.